UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ALEX AGYEMANG,

                    Petitioner                CIVIL ACTION NO. 3:25-CV-01417

        v.                                    (MEHALCHICK, J.)

WARDEN OF CLINTON COUNTY
CORRECTIONAL FACILITY,

                    Respondent.

**MEMORANDUM**

Alex Agyemang ("Agyemang"), who is detained in the custody of United States Immigration and Customs Enforcement ("ICE")[1], proceeds on an amended petition for a writ of habeas corpus (Doc. 29) pursuant to 28 U.S.C. § 2241 and motions for preliminary injunctive relief. (Doc. 33; Doc. 37; Doc. 40; Doc. 52). Because Agyemang's detention remains within the "presumptively reasonable" six-month period following his order of removal, and the Court lacks jurisdiction to consider any challenge to the execution of his removal order, the petition and motions for preliminary injunctive relief will be denied.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

In June 2006, customs officials at the Baltimore International Airport admitted Agyemang, a citizen of Ghana, to the United States for a period not to exceed five months,

---

[1] In a motion filed on January 22, 2026, Agyemang stated that he was transferred from the Clinton County Correctional Facility to "the Alexandria Staging Facility." *See* (Doc. 40). However, ICE presently lists him as being detained at the Clinton County Correctional Facility. *U.S. Immigration and Customs Enforcement Online Detainee Locator System,* https://locator.ice.gov/odls/ (last visited Feb. 23, 2026). A copy of this Memorandum and Order will be served on Karina Marrero Santana, who has identified herself as "an additional service contact" for Agyemang. (Doc. 42).

which he overstayed. (Doc. 7-2). On April 9, 2019, the Essex County Prosecutor Department arrested Agyemang in Essex County, New Jersey, in connection with charges of receiving stolen property. (Doc. 7-2, at 2). On April 16, 2019, ICE served Agyemang with a Notice to Appear for removal proceedings pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), on the basis that he remained in the United States beyond the expiration of his visa. (Doc. 7-3). On May 20, 2019, an immigration judge ordered Agyemang to be released from custody under a bond of $12,000 during his removal proceedings. (Doc. 7-7).

On May 3, 2024, the United States District Court for the District of New Jersey sentenced Agyemang to 12 months and 1 day of incarceration for convictions related to the sale, receipt, or possession of stolen property. (Doc. 7-6); 18 U.S.C. § 2315. While he was incarcerated, the Department of Homeland Security issued a detainer and a warrant for his arrest, on the basis that he "lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (Doc. 16-4). On September 10, 2024, ICE issued an order cancelling his prior bond (Doc. 16-5), and on March 4, 2025, he was transferred to ICE custody upon release from the Bureau of Prisons. (Doc. 16-3). Agyemang requested a custody redetermination, but an immigration judge denied relief based on Agyemang's failure to show that the "issues on appeal render him eligible for bond." (Doc. 7-11). On August 6, 2025, the immigration judge denied his application for asylum, and ordered his removal, but granted withholding of removal to Ghana. (Doc. 7-12).

On July 31, 2025, Agyemang filed the instant petition for writ of habeas corpus, requesting that Respondents, Pamela Bondi, Kristi Noem, ICE, and Warden of the Clinton County Correctional Facility release him from custody or provide him with a bond hearing

2

before an immigration judge.[2] (Doc. 1). Hoover filed a response to Agyemang's petition on September 25, 2025 (Doc. 7), and Agyemang filed a traverse on October 9, 2025. (Doc. 8). On October 9, 2025, Agyemang also filed a motion for a temporary restraining order and preliminary injunction.[3] (Doc. 9). Hoover filed a brief on opposition to Agyeman's motion on November 6, 2025 (Doc. 16), and Agyeman filed a reply brief on November 10, 2025. (Doc. 19).

On December 12, 2025, Agyemang filed his "Supplemental Reply Memorandum" (Doc. 29), which the Court construed as an amended petition. Therein, he argued, among other points, that his order of removal was not legitimate because his bond had been improperly revoked; that his removal was not reasonably foreseeable because ICE had not identified a plausible country of removal; and that his continued detention violated his due process rights. He requested immediate release or a bond hearing, and that DHS be "enjoined from attempting to remove him" without certain conditions. (Doc. 29). The Court ordered the government to respond. (Doc. 30; Doc. 31). On January 15, 2026, Agyemang filed a motion for a temporary restraining order (Doc. 33), alleging that ICE had identified Guinea

---

[2] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Angela Hoover ("Hoover"), Warden of the Clinton County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Agyemang is detained at the Clinton County Correctional Facility, Hoover is the proper respondent. (Doc. 1, at 1); (Doc. 4); *see Rumsfeld*, 542 U.S. at 434.

[3] Agyemang filed a motion to seal certain exhibits attached to his motion for temporary restraining order, given the confidential and sensitive information they contain. (Doc. 11). The Court **GRANTS** Agyemang's motion to file Exhibits E, F, and N under seal.

as a plausible country of removal and he had been "forced . . . to sign documents claiming Guinea would accept him." He requested that the Court enjoin any removal to a third country and order production of documents related to the removal process. (Doc. 33). The Respondents were ordered to file a supplemental response. (Doc. 34; Doc. 36).

On January 22, 2026, Agyemang filed two further requests for preliminary injunctive relief, essentially reiterating allegations, arguments, and requests for relief made in prior filings. (Doc. 37; Doc. 40). On February 19, 2026 and February 23, 2026, Agyemang filed motions to clarify the statutory basis of his detention (Doc. 47; Doc. 54), in which he requested the Court to order Respondents to clarify their position. On February 19, 2026, Agyemang also filed a motion for temporary stay of removal (Doc. 50), motion to appoint counsel (Doc. 51), and motion for temporary restraining order (Doc. 52), reasserting previous arguments on notice before removal and access to counsel. (Doc. 32; Doc. 33). Accordingly, the petition and motions for preliminary injunctive relief are ripe for disposition.

## II.    LEGAL STANDARDS

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with

4

regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan,* 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled such relief under relevant constitutional or statutory protections. *See Zadvydas v. Davis,* 533 U.S. 678, 682 (2001) (finding the government may detain a noncitizen with a final order of removal only for a period reasonably necessary to secure the noncitizen's removal); *see A.L. v. Oddo,* 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Neill,* No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.,* 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States,* 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR").

However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later, on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil*, 164 F.4th at 278-79 (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Agyemang's detention after his order of removal became final has become unconstitutionally prolonged. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79; *Zadvydas*, 533 U.S. at 688.

## IV.    DISCUSSION

The arguments in Agyemang's amended petition fall into three categories. First, he attempts to litigate issues with his detention prior to removal. (Doc. 29, at 3-4). He argues that his detention is invalid because ICE's revocation of his original bond is "*void ab initio*," and

that the immigration judge's subsequent bond determination was flawed; however, any dispute about pre-removal bond became moot when Agyemang's order of removal became final. *See Rodney v. Mukasey*, 340 F. App'x 761, 763-64 (3d Cir. 2009) (finding after a final order of removal, any alleged "unreasonably long pre-final order of removal detention . . . can no longer be redressed by a favorable judicial decision"); *see also W.J.C.C. v. Trump*, No. 3:25-CV-153, 2025 WL 3452210, at *3 (W.D. Pa. Nov. 7, 2025) (finding same).

Next, Agyemang challenges his ongoing detention after the August 6, 2025 order of removal. (Doc. 29, at 6-17). The INA provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day period began on September 6, 2025, after Agyemang's removal order became "administratively final."[4] (Doc. 7-12). If the noncitizen is not removed within the statutory 90-day period, the government is permitted to continue detaining a removable noncitizen for a "presumptively reasonable period" of six months. *Zadvydas*, 533 U.S. at 700-02. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 700-02 (emphasis added); *see Alexander v. Att'y Gen. U.S.*, 495 F. App'x 274, 277 (3d Cir. 2012). Courts have generally found that when the petitioner's six-month period has not elapsed, the court is "required to presume that [the detainee's] current detention is reasonable,

---

[4] *See* 8 U.S.C. § 1231(a)(1)(B)(i); 8 U.S.C. § 1101(47)(B)(ii) (the order becomes final upon "the expiration of the period in which the alien is permitted to seek review of such order"); *Riley v. Bondi*, 606 U.S. 259, 266-67 (2025). The plain language of the statute forecloses Agyemang's argument that the removal period begins when ICE identifies a proposed country of removal that is not "speculative." *See* 8 U.S.C. § 1231(a)(1)(A).

7

and his habeas petition must be denied." *Dagne v. Lowe*, No. 3:23-CV-1531, 2023 WL 7314401, at *2 (M.D. Pa. Oct. 18, 2023); *see, e.g.*, *Deshati v. Noem*, No. 25-CV-15940-ESK, 2025 WL 3204227, at *3 (D.N.J. Nov. 17, 2025); *Joseph v. Betti*, No. 1:23-CV-0061, 2024 WL 3362270, at *4 (M.D. Pa. July 9, 2024). While Agyemang's statutory 90-day removal period expired on December 5, 2025, the six-month period contemplated in *Zadvydas v. Davis*, 533 U.S. 678, 700-02 (2001)*,* has not expired.

Agyemang further asserts that the government has violated his due process rights by failing to follow the procedures for his continued detention described in 8 C.F.R. § 241.4. (Doc. 29, at 21, 24-25). These regulations provide for administrative custody reviews at 90 days, 180 days, and one year after the final order of removal. *See* 8 C.F.R. § 241.4(k). The record indicates that Agyemang received a custody review after 90 days and declined a personal interview for consideration in a future custody review. (Doc. 31-1 ("Decision to Continue Detention" dated December 8, 2025)). Agyemang argues that "ICE violated every regulation" in conducting his review, but he presents no evidence of these alleged violations. (Doc. 29, at 21). He claims that the decision notice does not demonstrate an individualized review, but the regulations simply require that the decision "briefly set forth the reasons for the continued detention," which this notice did. (Doc. 29, at 24-25; Doc. 31-1); 8 C.F.R. § 241.4(d); *Odiase v. Oddo*, No. 3:25-CV-206, 2025 WL 2166673, at *4 (W.D. Pa. July 31, 2025); *Masih v. Lowe*, No. 4:24-CV-01209, 2024 WL 4374972, at *4 (M.D. Pa. Oct. 2, 2024).

Finally, in his supplemental motions (Doc. 33, Doc. 37, Doc. 40), Agyemang makes a series of objections to the government's efforts to facilitate his removal to Guinea. In brief, he alleges that he was "forced . . . to sign documents claiming Guinea would accept him"; that ICE has not afforded him adequate notice or opportunity to object to removal; and that

ICE has not presented adequate documentation to justify removal. For the reasons described *supra* in Section III, the Court lacks jurisdiction to consider Agyemang's challenges to any actions taken to "execute [the] removal order[]" against him. *See* 8 U.S.C. § 1252(g); *Khalil*, 2026 WL 111933, at *8-9; *see*, *e.g.*, *Salih v. Hoover*, No. 4:25-CV-02407, 2026 WL 161773, at *2 (M.D. Pa. Jan. 21, 2026) (court lacked jurisdiction to consider the petitioner's claim that it is "possible he will be removed to a third country with no advanced notice and without the opportunity to challenge his removal there on the grounds that his safety may be endangered in that country"); *Vue v. Noem*, No. 3:25-CV-0341, 2025 WL 2910619, at *2 (W.D. Pa. Oct. 14, 2025); *Odiase v. Oddo*, No. 3:25-CV-206, 2025 WL 2673938, at *6 (W.D. Pa. Sept. 18, 2025) ("[W]hen an alien: (1) has a final order of removal, (2) that final order of removal did not designate an alternate country of removal, (3) that alien is slated for removal to a third country, and (4) the alien has objections to the third country, the alien's challenge to removal to the third country is encompassed within the removal order.").

## V.    CONCLUSION

Accordingly, Agyemang's requests for preliminary injunctive relief will be denied, and his petition will be denied without prejudice to a re-filed petition upon the expiration of the presumptively reasonable period. *See Dagne*, 2023 WL 7314401, at *2. An appropriate order follows.

**Dated: February 25, 2026**                          *s/ Karoline Mehalchick*
                                                      **KAROLINE MEHALCHICK**
                                                      **United States District Judge**